**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RICHARD F. SMITH, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**RAJ K. MALLICK,**<br><br>Defendant. | **Civil Action No. 96-02211 (HHK/JMF)** |

**REPORT AND RECOMMENDATION**

This case was referred to me for a Report and Recommendation on Defendant Raj K. Mallick's Motion to Discharge Judgment as Paid, Satisfied, and Settled [#36] (hereinafter "Def's Mot."). As explained herein, I recommend that Defendant's motion be denied.

**I.    PROCEDURAL BACKGROUND**

This case arises out of a breach of contract dispute between Plaintiff, Richard F. Smith, and Defendant, Raj K. Mallick. In May 1997, both parties entered into a settlement agreement, amended by Plaintiff in April 1998, which directed Defendant to pay $206,000.00 plus interest to Plaintiff. Def's Mot. Exs. A, B. Defendant paid $50,000.00 on his debt, but ultimately defaulted on the remainder of the principal. Plaintiff then moved to enforce the settlement agreement, and on September 2, 1999, this Court entered a judgment for Plaintiff in the amount of $231,461.60 plus a daily interest of $38.05, which was affirmed on appeal. Def's Mot. at 3 ¶ 8. On December 22, 2005, Defendant filed a Motion to Discharge Judgment as Paid, Satisfied, and Settled. On

January 20, 2006, Plaintiff filed his <u>Opposition to Defendant's Motion to Discharge Judgment as Paid, Satisfied, and Settled</u> (hereinafter "Pl.'s Opp'n").  On February 3, 2006, Defendant then filed his <u>Response to Plaintiff's Opposition to Defendant Raj K. Mallick's Motion to Discharge Judgment As Paid, Satisfied & Settled</u> (hereinafter "Def's Resp.").

## II.     FACTUAL BACKGROUND

As my recommendation rests upon intricate facts and the chronology of this case, it is necessary to recount the following facts, that are not in dispute, in significant detail.

### A.     Initial Assignment

On August 12, 2002, Plaintiff assigned "all rights, title and interest" in his judgment against Defendant to eDebt Management Inc. ("eDebt").[1]  Def's Mot. Exs. E, F.  In the written assignment, Plaintiff gave eDebt "total and exclusive right to collect" and authorized eDebt "to take complete ownership of the judgment [] and compromise, settle and enforce" the judgment. <u>Id</u>.  Upon any successful collection of the judgment, eDebt was to retain 40% of the proceeds and disburse 60% to Plaintiff. Def's Mot. Ex. E.

### B.     The Settlement Offer - Part 1

On September 19, 2002, eDebt's President, T. Gordon Cranston[2] ("Cranston"), sent a letter to Defendant offering to resolve the debt. Def's Mot. Ex. R.  Several months later, on April 22, 2003, Defendant wrote eDebt's outside counsel with an offer of settlement:  Defendant offered to convey a deed to property in Arizona worth $60,000.00 and pay $20,000.00 cash for a

---

[1] eDebt dissolved on January 16, 2004.

[2] According to eDebt's counsel, only a Gord<u>a</u>n C. Cranston, as opposed to T. Gord<u>o</u>n Cranston, could be found in a records search. Def's Mot. Ex. O.

full and final release of the judgment. Def's Mot. Ex. H.  On May 6, 2003, eDebt's counsel sent a letter to Defendant stating that eDebt was <u>considering</u> the settlement offer. Def's Mot. Ex. G.  In addition, the letter declared to Defendant that "eDebt is now the legal holder of the judgment. This ownership interest was taken on August [12], 2002.  [Plaintiff] transferred this judgment by assignment." <u>Id.</u>

  **C.**  **Reassignment**

At an unknown date in or before October 2003, eDebt's operations manager informed Plaintiff's counsel that eDebt had terminated its debt collection business and was no longer engaging in any efforts to collect the judgment against Defendant. Pl.'s Opp'n Decl. ¶ 3; Pl.'s Opp'n Ex. C.  Because eDebt was no longer interested in the judgment, Plaintiff requested that eDebt reassign the judgment back to him. <u>Id.</u>  Accordingly, on October 15, 2003, Cranston reassigned the judgment in its entirety back to Plaintiff, complete with full authority "to settle, adjust, compromise and satisfy [the claim]." Pl.'s Opp'n Ex. A.  In the written reassignment, eDebt stated that it had "no further interest in said debt for any purpose." <u>Id.</u>  For reasons unknown, neither Defendant nor eDebt's counsel was notified of this reassignment back to Plaintiff until January 7, 2004. <u>See</u> Pl.'s Opp'n Ex. C.; Def's Mot. Ex. O.

  **D.**  **The Settlement Offer - Part 2**

During October and early November 2003, both Defendant's counsel and eDebt's counsel continued to negotiate the settlement offer.  At that time, neither was aware of the reassignment back to Plaintiff. Def's Mot. Ex. I.  Yet, despite Cranston's reassignment of the judgment back to Plaintiff, Cranston continued to act on behalf of eDebt as though it were still the legal holder of the judgment.  Once the settlement offer was accepted, on November 13, 2003, Cranston went so

far as to execute a Praecipe noting the judgment as "paid, satisfied and released." Def's Mot. Ex. J.  Cranston also signed the Praecipe under Plaintiff's name and used Plaintiff's signature. Id.; Pl.'s Opp'n Decl. ¶ ¶ 5, 6.  According to Defendant, Cranston believed that Plaintiff had granted him power of attorney. Def's Mot. Ex. O.  On or about November 20, 2003, Defendant performed under the "purported" settlement agreement with eDebt, conveying an executed warranty deed to the Arizona property and paying $20,000.00 in cashiers checks.  As this matter now stands, the deed was never recorded and is being held in escrow, and Plaintiff has yet to receive the checks. Def's Mot. Exs. K, M, N; Pl.'s Opp'n Decl. ¶ 7.

      **E.**      **The Aftermath**

In early 2004, Defendant attempted to refinance some property and the judgment appeared on his record. Def's Mot. Ex. S ¶ 17.  After looking into the matter, Defendant learned for the first time that eDebt had reassigned the judgment back to Plaintiff. Def's Mot. Ex. O; Pl.'s Opp'n Ex. D.  On March 1, 2004, Defendant sent a letter to eDebt's counsel demanding that eDebt comply with the terms of the settlement agreement and release the judgment, even though Defendant mysteriously and simultaneously acknowledged that the Praecipe "ha[d] no legal affect [sic]." Pl.'s Opp'n Ex. D.

**III.**    **PARTIES' ARGUMENTS**

      **A.**      **Defendant's Arguments**

Defendant has now moved this Court to discharge the judgment as paid, satisfied, and settled, arguing that the settlement agreement between himself and eDebt was a valid, binding compromise of the judgment to which Plaintiff is legally bound.  Defendant argues that the settlement agreement is enforceable under governing contract law, because both eDebt and

4

Defendant agreed to the material terms of, and intended to be bound by, the agreement. Def's Mot. at 6-7. Defendant principally contends that Plaintiff bound himself to this enforceable agreement because, in assigning the judgment, Plaintiff authorized eDebt to act as his agent in collecting the debt. Id. at 8-11. Defendant asserts that the presence of this agency relationship caused him to perform under the settlement agreement in reliance upon Cranston's actual, or at the very least, apparent authority to settle and sign the Praecipe as power of attorney. Id. at 12. Defendant also argues that Plaintiff lacks standing to challenge the settlement agreement, because when Plaintiff assigned the judgment to eDebt, he divested himself of all rights thereunder and was no longer an aggrieved party. Id. at 8.

Consequently, Defendant sets forth two arguments why Plaintiff is barred from enforcing the full amount of the judgment. First, because Defendant was not timely notified of the reassignment back to Plaintiff, he argues that the settlement and release of the entire judgment is protected under the Uniform Commercial Code and common law. Id. Second, Defendant insists that the settlement and release of the "unliquidated" judgment was a valid accord and satisfaction. Id. at 6-7. Accordingly, Defendant suggests that the dispute is now between Plaintiff and eDebt, for Defendant has satisfied the debt under a "legally valid and binding" agreement and therefore is no longer a party to the action. Def's Resp. at 2.

**B.  Plaintiff's Arguments**

Plaintiff opposes all of Defendant's arguments and moves this Court to deny Defendant's motion. Plaintiff contends that he is not legally bound to what is an invalid settlement agreement.

First, Plaintiff argues that when eDebt reassigned the judgment back to him, eDebt had no

authority to continue negotiations with Defendant and obtain satisfaction of the judgment without his knowledge or consent. Pl.'s Opp'n at 6.  Plaintiff insists that when eDebt divested itself of all rights or interest in the judgment via the reassignment, Plaintiff became rightful owner of the debt. Id. at 6-7.  Because the debt belonged to Plaintiff, only Plaintiff had authority to settle and release the judgment. Id. at 14.  Second, Plaintiff argues that nowhere in the original assignment did he ever give eDebt actual authority to act as his agent, nor was eDebt ever subject to his control. Id. at 5, 7, 9-11.  Moreover, Plaintiff asserts that at no time during the assignment did his actions give rise to any reasonable belief that he established apparent authority in eDebt. Id. at 11-12.  Plaintiff believes that because Defendant proceeded at his own peril based on an unreasonable assumption of agency, Defendant cannot prevail on any theory of apparent authority, especially because Defendant never relied to his detriment on his continued negotiations with eDebt. Id. at 8-13.

Plaintiff also argues that he can enforce the remainder of the judgment because (1) lack of notification does not protect Defendant from release of the judgment; at most, Defendant is only entitled to a credit against the debt; and (2) contrary to Defendant's assertion, there has <u>not</u> been an accord and satisfaction of the judgment; rather, the judgment was final, for a fixed amount, and therefore "liquidated." Id. at 15-17.

## IV.  DISCUSSION

An examination of both parties' arguments and the facts of this case compels me to recommend that Defendant's motion be denied.  As I will explain below, based upon the sequence of events in this case, the settlement agreement is unenforceable under the fundamental tenets of contract law.  Even if the settlement agreement were an enforceable contract between

Defendant and eDebt, Plaintiff would not be bound to the agreement under any theory of agency. Furthermore, Defendant's lack of notice of reassignment does not entitle him complete release from the judgment and, the doctrine of accord and satisfaction is not applicable to this case.

**A.     Contract Law**

As a threshold matter, the settlement agreement is unenforceable because, before eDebt accepted Defendant's offer and executed the Praecipe, eDebt had reassigned complete interest in and control over the judgment back to Plaintiff. The enforceability of a settlement agreement is governed by substantive state contract law. See Samra v. Shaheen Bus. & Inv. Group, Inc., 355 F. Supp. 2d 483, 494 (D.D.C. 2005); Simon v. Circle Assocs., Inc., 753 A.2d 1006, 1012 (D.C. 2000). In the District of Columbia, a contract is formed when the offer is accepted. Samra, 355 F. Supp. 2d at 499 (citing Malone v. Saxony Co-op. Apartments, Inc., 763 A.2d 725, 728 (D.C. 2000) ("[T]o form a contract the offeree must convey to the offeror his acceptance of the offer.")). At the time that eDebt accepted Defendant's offer, eDebt had no authority to accept it because the reassignment divested it of all rights, title, and interest in the judgment. See Walker Mfg. Co. v. Dickerson, Inc., 510 F. Supp. 329, 331 (D.N.C. 1980) (assignment of judgment divested assignor of all rights to control collection of the judgment); 50 C.J.S. Judgments § 624 (2005) (assignment of a judgment has the effect of divesting the assignor "of all interest in, and all control over, the judgment, so that the assignor cannot affect the rights given to the assignee without the assignee's consent . . . ."). In reassigning the judgment back to Plaintiff, eDebt effectively voided the original assignment because it "[relinquished] all rights to the judgment, including the right to release the judgment debtor." 46 Am. Jur. 2d Judgments § 439 (2006). eDebt even acknowledged in the reassignment that it had "no further interest in said debt for any

purpose." Pl.'s Opp'n Ex. A. There can be no clearer revocation of interest in a judgment than this foregoing statement. Without any hint of ambiguity, eDebt was undoubtedly aware of what it was doing.

According to the chronology of events in this case, the judgment was reassigned back to Plaintiff on October 15, 2003 – at least a few days <u>before</u> eDebt accepted Defendant's settlement offer[3] and almost a month <u>before</u> Cranston executed the Praecipe on November 13, 2003. Because a valid assignment or reassignment becomes effective when it is made, eDebt's acceptance of Defendant's offer was ineffective and no contract was formed. 6A C.J.S. <u>Assignments</u> § 88 (2005).

**B.     Agency Law**

Moreover, Plaintiff cannot be bound by the settlement agreement under any theory of agency. The underlying principle of agency is that "the agent has a duty to act in accordance with what he reasonably believes to be the principal's desires."[4] Restatement (Second) of Agency § 44 cmt. a (1958). <u>See</u> <u>also</u> <u>Griggs v. Wash. Metro. Area Transit Auth.</u>, 66 F. Supp. 2d 23, 28 (D.D.C. 1999) ("An 'agent' has been defined as 'one who is authorized by another (principal) to act on his behalf'") (quoting <u>Johnson v. Bechtel Assoc. Prof. Corp.</u>, 717 F.2d 574, 579 (D.C. Cir. 1983), <u>rev'd on other grounds sub nom.</u> <u>Wash. Metro. Area Transit Auth. v. Johnson</u>, 467 U.S. 925 (1984)). Hence an assignment of interest in a judgment does not, in and of itself, create a principal/agent relationship between assignor and assignee. Rather, the presence of an agency

---

[3] In either party's briefing, I cannot find any evidence of a formal acceptance but only passing reference to "the arrangements discussed." Def's Mot. Ex. *I*.

[4] For example, if an agent is unsure whether he has the authority to act in some capacity, he has a duty to communicate with the principal to discern the principal's intent and obtain more specific instructions. Restatement (Second) of Agency § 44 cmt. c (1958).

relationship is satisfied by three elements: "(1) that the principal acknowledged that the agent would act for him or her; (2) that the agent accepted the undertaking; and (3) that the principal exercised control over the agent's actions." Samra v. Shaheen Bus. & Inv. Group, Inc., 355 F. Supp. 2d 483, 503 (D.D.C. 2005) (emphasis added). The determinative factor of an agency relationship is the measure of control. See Railan v. Katyal, 766 A.2d 998, 1010 (D.C. 2001); Restatement (Second) of Agency § 14G ("An assignee of a claim is an agent of the assignor only if the latter retains an interest in, and control over, the claim."). If it is unclear whether an agency relationship exists, then the absence of control is generally dispositive:

> 'If the existence of an agency relation is not otherwise clearly shown, as where the issue is whether . . . an agency has been created, the fact that it is understood that the person acting is not to be subject to the control of the other as to the manner of performance determines that the relation is not that of agency.'

Int'l Longshoremen's Ass'n v. NLRB, 56 F.3d 205, 213 (D.C. Cir. 1995) (quoting Restatement (Second) of Agency § 14 cmt. b).

To support his argument that an agency relationship existed between Plaintiff and eDebt, Defendant states,

> The assignment to eDebt in this case was valid proof that the Plaintiff acknowledged that eDebt would be acting for him, or in this case, in place of him. . . . Plaintiff wanted eDebt to collect the debt from Defendant in Plaintiff's place, and eDebt did that by entering into a settlement and release of the debt; thus Plaintiff did exercise control over eDebt by having eDebt collect the judgment. Plaintiff assumed the risk that its assignee would act in a way that it did not agree with. Plaintiff placed eDebt in this position, and gave [eDebt] actual, or at least apparent, authority to act.

Def's Mot. at 9. Defendant also argues that Plaintiff exercised control over eDebt because he retained the right to receive 60% of any settlement proceeds. Def's Resp. at 4. In opposition to Defendant, Plaintiff argues that he neither created an agency relationship with nor retained

9

control over eDebt:

> Nothing in either the Acknowledgment of Assignment or in the accompanying Agreement of Assignment of judgment referred to [Defendant] as a 'principal' or to eDebt as an 'agent'. . . . eDebt retained full control over the Judgment, including the rights to sell the Judgment, collect on it, or take any other action concerning the Judgment for so long as eDebt actually owned the Judgment.

Pl.'s Opp'n at 5, 10.

I find no evidence that Plaintiff authorized or intended that eDebt act as his agent. If the litmus test of an agency relationship requires the agent to act subject to the principal's control, this is not the circumstance here. Defendant relies solely upon the initial assignment of interest to support his allegation that a principal/agent relationship exists. Yet Plaintiff's initial written assignment vested eDebt with "<u>complete ownership</u>" of the judgment, "with all rights, title and interest" to "compromise, settle and enforce" the judgment – it did not create an agency relationship. <u>See</u> Def's Mot. Exs. E, F (emphasis added). Plaintiff clearly relinquished all of his rights to influence or control eDebt's actions – at no time was eDebt required to confer with Plaintiff over the terms of the settlement or obtain Plaintiff's consent to release the judgment. Although Defendant argues that Plaintiff's right to collect 60% of the proceeds is a clear indication of control, I find this argument unavailing. Plaintiff's reservation of 60% is not evidence of control because, had the judgment never been reassigned, Plaintiff would have retained no influence or control over the amount of eDebt's settlement. In essence, Plaintiff was at the mercy of eDebt, not the other way around as is required in an agency relationship.

Similarly, Defendant cannot bind Plaintiff to the settlement agreement on the theory of apparent authority. Apparent authority may exist where the principal made some manifestation to the third party, which misleads the third party into believing that the agent is clothed with

10

actual authority to act on behalf of the principal when in fact no such authority exists. See Makins v. District of Columbia, 861 A.2d 590, 593, 594 (D.C. 2004); DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co., 388 F.3d 886, 890 (D.C. Cir. 2004).  Such manifestations may include "written or spoken words or any other conduct of the principal" but such manifestations must also be "reasonably interpreted" by the third party to indicate an agency relationship. Makins, 861 A.2d at 594 (holding that a client's manifestations, other than retention of an attorney, were "insufficient . . . to support a reasonable belief by the [third party] that [the attorney] had full and final authority" to enter into a settlement agreement); DBI Architects, 388 F.3d at 890.

Defendant claims that the mere act of "[giving] eDebt all the rights to the judgment" was a manifestation of Plaintiff's control over eDebt. Def's Mot. at 10.  By this "action[] and manifestation[] of authority to eDebt," Defendant argues, Plaintiff legally bound himself to the settlement agreement by cloaking eDebt with authority to act as his agent. Id. at 10-11.  Plaintiff argues that Defendant's claim of apparent authority is unreasonable and entirely groundless because Defendant solely relies upon Plaintiff's single act of assignment, which Plaintiff contends is "insufficient to clothe eDebt with apparent authority." Pl.'s Opp'n at 12-13 (citing Makins, 861 A.2d at 594).  Because Defendant had no reasonable grounds to believe that eDebt was Plaintiff's agent and failed to make any inquiry as to whether eDebt was so authorized, Plaintiff asserts, "A party that mistakenly deals with a purported agent without verifying the alleged agent's authority proceeds at its own peril." Id. at 8 (citing Fennell v. TLB Kent Co., 865 F.2d 498, 503 (2d Cir. 1989)).  Moreover, under DBI Architects, 388 F.3d at 890, Plaintiff insists that "[Defendant] cannot prevail on a theory of apparent authority unless he can demonstrate that

11

he relied to his detriment upon his dealings with eDebt . . . . [because Defendant] has provided no evidence that the checks he sent to eDebt were ever cashed, and the Deed remains in escrow with eDebt's counsel." Pl.'s Opp'n at 13.

Under the circumstances of this case, it is patently unreasonable for Defendant to believe that Plaintiff manifested apparent authority in eDebt. First, the plain language of the assignment is unambiguous; the assignment never created an agency relationship with eDebt and did not include words such as "agent," "principal," or "power of attorney." Without question, Plaintiff relinquished all of his rights to the judgment when he transferred complete ownership to eDebt: "The assignor of a judgment or decree, by the assignment, deprives him- or herself of all interest in and control over it and transfers to the assignee the ownership of the judgment and all remedies thereunder." 46 Am. Jur. 2d Judgments § 439 (2006). One could not reasonably infer apparent authority from such conduct. It should have been crystal clear to Defendant that eDebt's authority to settle and release the judgment was on its own behalf, and not contingent upon any agreement of Plaintiff.

Second, Defendant provides no evidence of conduct by the Plaintiff, outside of the assignment, that could mislead Defendant into believing that eDebt had authority as agent. Defendant actually refutes his own argument by conceding that Plaintiff did not control eDebt under the initial assignment. Before the judgment was reassigned, not only did Defendant recognize that "eDebt would be acting . . . in place of [Plaintiff]," Def's Mot. at 9 (emphasis added), but also Defendant was placed on notice in May 2003 that "eDebt Management, Inc. is now the legal holder of the judgment." Def's Mot. at Ex. G. As such, Defendant should have immediately questioned Cranston's use of power of attorney on the Praecipe because Defendant

was clearly aware, or should have been aware, that Plaintiff did not own the judgment and had no influence over how the debt was compromised. See Senate Motors, Inc. v. Indus. Bank of Wash., 1971 WL 17944 (D.C. Super. Ct. July 2, 1971) ("An unauthorized endorsement means one made without actual, implied, or apparent authority."). Defendant's claim that eDebt had apparent authority to act as Plaintiff's agent is therefore unreasonable, because eDebt was never required to consult with or obtain consent from Plaintiff in regards to any settlement or final release of the judgment. Plaintiff neither created actual nor apparent authority in eDebt to act on his behalf and therefore cannot be bound to Defendant's settlement agreement with eDebt. "[A] purported release has no effect on the party taking the assignment." 6A C.J.S. Assignments § 88. See also State ex rel. Johnson v. Mount Olivet Cemetery Co., 834 S.W.2d 306, 310-11 (Tenn. Ct. App. 1992) (ruling that once a judgment is assigned, assignor has no right to release debtor, nor does purported release by assignor have any effect on assignee).

### C. Failure to Receive Notification of Reassignment

Defendant insists that he is protected from paying the full amount of the judgment because he was never notified of the reassignment back to Plaintiff. When Cranston signed the Praecipe, Defendant insists that he "was well within his rights to believe that eDebt had the authority to discharge the debt" because he "had no reason to know or believe that eDebt did not have authority to act on Plaintiff's behalf." Id. at 12. As such, Defendant cites both the Uniform Commercial Code § 9-406(a) and District of Columbia v. Thomas Funding Corp., 593 A.2d 1030, 1034 (D.C. 1991), for the proposition that a debtor may pay the assignor until the debtor is notified that the amount due has been assigned. Def's Mot. at 12. Plaintiff contends that Defendant inappropriately extends the scope of U.C.C. § 9-406(a) and Thomas Funding, for the

rule only permits a debtor to receive credit for payments made to the assignor prior to learning that he must pay someone else, and cannot be construed to permit the assignor to release the entire debt. See Pl.'s Opp'n at 17.

I agree with Plaintiff. Defendant takes an improper leap in extending U.C.C. § 9-406(a) and Thomas Funding to the full and final release of his judgment. This failure to notify rule exists to protect the debtor's payments to the creditor, and nothing more. See Pauley v. United States, 459 F.2d 624, 627 (9th Cir. 1972) ("Failure to give notice to an obligor of assignment of his debt. . . . simply protects the debtor, who, without knowledge of the assignment, makes payment to the creditor-assignor."). While Defendant may be entitled to a credit for his performance to eDebt under D.C. Code § 28:9-318(3)[5] and Thomas Funding, Defendant is unwarranted in claiming that a full extinguishment of the judgment is likewise protected, when it is undisputed that on the day of the agreement between eDebt and Defendant, the debt had already been reassigned by eDebt to its original owner. Moreover, that Defendant may not have been aware that a reassignment occurred cannot possibly mean that an agreement with someone who no longer owned the debt could possibly be effective.

### D. Doctrine of Accord and Satisfaction

Defendant asserts that the doctrine of accord and satisfaction further precludes enforcement of the full judgment against him. See Def's Mot. at 12-13. Under the circumstances of this case, however, the doctrine of accord and satisfaction does not apply because the judgment debt is for a fixed amount. Accord and satisfaction is a "method of discharging and terminating an existing right and constitutes a perfect defense in an action for enforcement of the

---

[5] D.C. Code § 28:9-318(3) resembles U.C.C. § 9-406(a).

previous claim." Pierola v. Moschonas, 687 A.2d 942, 947 (D.C. 1997). For the defense of accord and satisfaction to lie, a court must first recognize a pre-existing and valid contract between the parties, because an accord is a contract. See ABB Daimler-Benz Transp. v. AMTRAK, 14 F. Supp. 2d 75, 93 (D.D.C. 1998) (citing Bank-Fund Staff Fed. Credit Union v. Cuellar, 639 A.2d 561, 575 (D.C. 1994); Goldman v. Bequai, 19 F.3d 666, 672 (D.C. Cir. 1994)). Once an enforceable contract is identified, three elements must be met: "(1) a legitimately disputed claim or unliquidated claim; (2) a mutual agreement between the parties to accept something other than what is due in satisfaction of the claim; and (3) the giving and taking of the substituted performance." ABB Daimler-Benz, 14 F. Supp. 2d at 93 (citing Stinson v. Mueller, 449 A.2d 329, 331-32 (D.C. 1982) (emphasis added)).

      The first two elements of the ABB Daimler-Benz test are not satisfied in this case. The principal dispute between Defendant and Plaintiff appears to be whether the judgment is liquidated or unliquidated. Liquidated claims are either fixed in amount or undisputed; unliquidated claims arise if there is a dispute as to liability, the amount due, the method of payment, or a number of other questions. Pierola, 687 A.2d at 948. The first prong is therefore easily disposed of, because at issue here is a court-ordered judgment for a fixed amount that is not in dispute – it is clearly liquidated. Even if the claim was unliquidated, accord and satisfaction would still not apply because, as I explained above, the settlement agreement between eDebt and Defendant is an unenforceable contract, and an unenforceable contract cannot override or extinguish the existence of the court judgment. Defendant's argument that he mutually agreed on a settlement amount with eDebt is of no consequence; without an enforceable contract or an unliquidated claim, accord and satisfaction cannot apply here.

## IV.     CONCLUSION

I, therefore, recommend that defendant's motion be denied.  Without an enforceable contract, an agency relationship, or an accord and satisfaction, Defendant cannot bind Plaintiff to eDebt's unauthorized settlement and release of Plaintiff's judgment against Defendant.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).**

_____

**Dated:**                                                                               **JOHN M. FACCIOLA**
                                                                                                     **UNITED STATES MAGISTRATE JUDGE**